Good morning, your honors. Can you hear me all right? Yes, we can. I'm Richard Donaldson and I'm the attorney for Paul Miskey, the appellant. And this, glad you saved the most exciting case for last, because this deals with social security, government pension offset. The matter began with Mr. Miskey, whose wife of 30 years passed away. And he was advised that he was entitled to social security survivors benefits or widowers benefits. In these conditions, it would be normally he would just apply and be awarded benefits. However, he had two separate careers. The first career was in public service for 13 and a half years, I believe. He worked there from 74, I think to 94. And then left and began a whole new career with the Las Vegas Valley Water District. It was a local government agency, but it paid FICA taxes and was covered by social security. So under those conditions where people have two careers, Congress passed a Social Security Protection Act, which allowed the GPO or dual entitlement provisions to cut benefits from social security by two thirds in order to, well, they, I guess they just rather have the money. In any event, they started that and he was Mr. Miskey was notified that instead of getting a thousand some dollars, he got $373. He protested, social security changed his mind. And after a long series of administrative processes, he filed two requests for reconsideration when nothing had been done after 12 or 14 months. And they gave him the same answer, but for different reasons. And those reasons don't, to me anyway, make a lot of sense because they say things like, well, the work that you did for the water district has absolutely nothing to do with this case. Unfortunately, it does because in order to get an exception to the government pension offset, and by the way, that's what we're looking for, an exception, you have to have been covered by both social security and the non-FICA covered plan for the last 60 months of your employment. Mr. Miskey was covered for the last 234 months of his employment, one because he was receiving a pension from the Department of Transportation, which did not pay FICA taxes. And he was also covered because he was working for the water district, which did pay FICA taxes. And the basic... So can I interrupt you for a second? We could get into the language of the Let's say, just for the purposes of this question, that we disagree with you about whether the GPO applies, but we agree with you that it wasn't his fault that there was this mistake. Wouldn't we need to remand to figure out whether recoupment would defeat the purposes of Title II or be against equity and good conscience? It seems like there would need to be a remand then, but you're asking us to say that a remand is inappropriate. So I'd like to ask about that. Well, that was the basis of many of my objections or difficulties with it, because the administrative law judge, the district court judge, the magistrate judge all began in the middle. Well, let's just assume that he's been overpaid. Let's assume that the GPO does apply and he loses money properly. So let's start in the middle and decide whether he's at fault. But I'm saying let's agree with you that he's not at fault. Then what? Okay. Well, they also... We're getting all the way to the end of my presentation, but I believe that the government has misinterpreted the case of Quinlivan versus Sullivan and the basic premise that Quinlivan was that it was too overly restrictive in determining whether or not it was against equity and good conscience to recover this overpayment. Now, the case... I'm sorry. I'm just... There hasn't been a determination at all, though, right, what would be equitable here. So don't we need a remand for fact-finding about whether he relied and if he relied in a way that would make it not equitable to make him pay it back? Well, yes, Your Honor. If we just assume he's wrong about the government pension offset, yeah. I mean, fine. My problem was with, A, the government pension offset itself. I could... It should be sent to the appeals council, which doesn't do any development. It just doesn't. Right. It seems like that might be wrong. Maybe they thought the appeals council would send it back to the ALJ and it was actually about the ALJ. But what I'm trying to figure out is, doesn't an ALJ need to make a determination of equity and good conscience here? No, because he was not overpaid. Well, let's assume for a moment that he was. Then, don't we need to figure out equity and good conscience? Yes. And that would be done by an ALJ? Well, it would be done... Well, the appeals council has ALJs. They just don't have an ability to develop the record with regard to fault or equity and good conscience. That's all. The government's sole issue is whether or not the district court had jurisdiction or abused its discretion in remanding the case back to the appeals council. And I say, well, for several reasons, no, it doesn't. It has to come under the Meltonian case. It must apply either sentence four or sentence six of 405 G and it fits with neither one. Can't do either one under Meltonian. So, by the way, the government hasn't denied virtually anything. Their answer was like a blanket denial in saying that there was no reason to have to deny it because it was a prayer for relief. But what have you put forward? When you say they haven't denied it, what has been your affirmative case for why it would be inequitable to make him repay if we get that far? Have you made a showing already on equity and good conscience? I made a showing, I think, with regard to equity and good conscience that they applied the law everywhere but the Ninth Circuit. But equity and good conscience is about whether your client relied on having the money and whether it would be unfair to make him repay it. So, what have you offered to show that it would be inequitable? Well, Laura, I would say that under the case of that you relied on it, that you gave up a valuable thing, is that Quinlivan erased that requirement. And it also said that in those cases that you have a question of whether or not it's fair or not to have to pay it back, that what we have to worry about here is the basic thing that the statute itself. He says in the very last provision, money, the amount of wealth he has, has no effect on this. This is nothing. So, Quinlivan said, well, let's consider everything, all right? And the government has proposed that the income of the beneficiary is like a circuit breaker. So, once he has enough money, well, he loses and he has to pay it back. Now, he's, in fact, he's already paid it back, they've taken it away from him. But realistically speaking, the court in Quinlivan said, hold it. It never defined, never defined anything about what constitutes equity and good conscience. So, we will look at what the Congress said. And Congress said, back in 72, I think, that his financial circumstances mean nothing. Now, that case was decided in 1990. The newest version of the statute in 2003 continues to indicate that the last provision, money, means nothing. We shouldn't have to worry about money. And that's the only reason that I was very concerned about that, because the guy has already paid it back. It's kind of hard to argue he doesn't have any money. But the point is, he's been screwed. He would get to have it back again, right? If he wins? Oh, yeah, I think so. I haven't asked him that one, but I'm pretty sure of the answer. So, I mean, but I'm just suggesting that it is a, I started in many places, I said it is a, an absolutely, it is a Gordian knot of a regulation. The AOJ cited the precise opposite of what the rule was. And according to that, he even drafted a chart that no one could understand. So, but number one, he was a true, honest to God, widower. There's no question about that. Two, he worked in non-covered employment. Three, he worked in covered employment. Four, he was covered throughout the entire time for 234 months prior to his stopping work. And he, those are all the requirements that are set out in the, I can't remember the stat. But wouldn't the covered and uncovered employment have to be under the same pension plan? Well, that's what I consider to be, it says under the same pension plan. That provision is nested in a bunch of examples that say, well, if you worked in covered work, then went to public work that didn't pay FICA, and then went back to covered work, then you couldn't, the examples of how you compute the 60 months, that isn't an issue in here. If you follow that, that has to be the same thing. How do you return? He's only had two careers. How do you return to a place you've never been? I mean, it says return to other types of work. And the notices are totally at odds with one another. And the ALJ, as a matter of fact, even skipped the GPO application and went straight to waiver, just like Judge Farnback, Magistrate, and also Judge Holt. But nobody who's ever decided this case has ever faced it head on. Nobody wanted to take a look at it. I mean, the district court judges are very, he works really hard. And he just dumped this whole case. He just said, there were no findings of fact, there were no conclusions of law, there were no directions, and he sent it from place with a 1% allowance rate, with a different standard of review. I mean, how does one deal with that? All right, so let's hear from the government. Good morning, your honors. Elizabeth here on behalf of Kilo Kijikazi, the acting commissioner of Social Security. This case is about whether or not the district court abused its discretion by remanding this case for further proceedings, rather than giving claimant exactly what he asked for in his complaint or his pleadings. The district court three times decided it did not have enough evidence. The record was too scant for it to decide the issues that claimant wanted it to decide. First being whether or not the GPO actually applies. Second being whether or not claimant was overpaid. Third, whether if claimant was overpaid, he was at fault. And then if he was at fault, whether or not the other two issues, whether it's against the purposes of Title II or against equity and good conscience apply. The district court, the agency agrees the ALJ's decision is deficient. And if you want a reason for that, we can give it. It is, I think, as you know, to Judge Freeland, it does hinge on the fact that the ALJ made a lot of assumptions about claimant in the faults area. And we don't believe those are supported by her decision or by the record that we have. So we agree. I don't understand why we would remand the question whether the GPO applies at all. It seems like that's a legal question that should get answered. And why shouldn't we answer it? Why shouldn't the district court have tried to answer it before remanding? I mean, I don't understand what the ALJ needs to do more on that point. I agree with you, Your Honor. And I think if we would have been better, we would have better served everyone here to have put that in our motion to remand, because I think it's very clear the GPO applies to this man's first pension. If you take his, and it seems like you agree, but if you take his position that the only thing that matters is your last five years of covered employment, then someone could theoretically work for 20, 25 years in non-covered employment, not pay anything into FICA, and then work for the last five years in covered employment and that first pension would disappear. And that's just not the way the statute is designed. That's not the way the regulations that interpret it are designed. So I think you're right. We should have said that. And that is a legal issue. And if the district court wanted to decide that legal issue, it could have. I don't think it's an abuse of discretion that it didn't, however, because I think under that standard is whether or not this court is firmly convinced that what the district court did was beyond the pale of reasonableness under the circumstances. And I think that's where the fact of the complexity of this particular claimant's dual pensions, the fact that the statute and the regulations are not crystal clear, that for the district court to have not wanted to for a brand new decision, which is essentially what it said. But on that prong, would there be any different? I don't understand what would happen differently on that prong. Well, I think it would give claimant another day in court, so to speak, to try to convince the agency that he's somehow entitled to an exception on that one pension. But isn't that going to happen because he'll show he's on the other prongs? I mean, the way he would win is to show that he wasn't at fault and that the equities are in his favor, right? Yes. Well, yes. And do you understand why there was a remand to the appeals council? It seems like those other things need to be decided by an ALJ and the appeals council isn't the right remand body. Your Honor, that is just a procedural element to the way the agency works. District courts remand to the appeals council. The appeals council assigns an administrative law judge. And the reason why we do it that way is because in one of the reasons in a lot of situations for regular disability claims, or there might be an issue in that remand order, an issue that the appeals council could correct. Say it's something about a date last insured issue or something like that. The appeals council could rule on that without having to send it to administrative law judge. So in this case, all that means is that we are contemplating the appeals council gets the case on remand and then it assigns another ALJ. So that is just procedural. It doesn't mean we're expecting the appeals council to develop the record or anything like that. And how long is it likely to take for the ALJ then to adjudicate this? Because as I understand it, if he wins, ultimately he's been owed this money for quite a long time at this point. Because if he wins by showing that he shouldn't have had to repay it, you've taken it back already. That's what I learned that from the reply brief in this case. So he would get it back with interest if that were the case. But as you noted right off the bat, whether he's at fault was improperly adjudicated. And because the ALJ found he was at fault, she didn't do the other two elements. But should we decide that he's not at fault ourselves? Is there really any argument that he is at fault here? I think that is a factual question for a fact finder. I think there is enough ambiguity in this record whether or not he is. There is evidence that of course the agency erred. We admitted that. It's all over this record that the agency gave him incorrect information at certain points. But that doesn't mean that it's automatically. What shows that he was at fault? Well, it hasn't been disputed that when he first got his pension in September 2015, I think it was, 2013. And then shortly thereafter, and he was only getting the non-covered pension at that point. And shortly thereafter, he applied to have his benefits readjusted. And at that point, and this is undisputed in the record, he only submitted pay stubs for the covered employment. Now, I'm not saying that he did that on purpose or that he did that with ill intent. But we don't know that from just the way this limited record looks. But SSA had already decided that he was not the GPO applied, correct? Well, it decided two things. So which point in time are you talking about? Well, I mean, he applied for reconsideration. It was in his application for reconsideration that he submitted those additional pay stubs, right? I may have inadvertently used the word reconsideration. I didn't mean as the technical, you know, the steps in the process. He wanted like a reassessment of his benefits because he was now getting a new pension. But given how confusing this is, and given that the agency couldn't even figure it out, how is there any way he's at fault? Well, like I just said, it's not clear what he was portraying to the agency when he asked for that reassessment with the new pension. And then at the hearing, the ALJ did ask him whether or not he thought the initial benefit was in error or was incorrect. And he said, I sort of suspected it was. I'm not saying this says he's at fault. And if you find he's not at fault, that is making, but that's making a factual finding that a court shouldn't make at this stage. It's, you know, because the district court said, take it back, you would have to be finding that the district court abused its discretion by saying, I'm not going to decide this, go back agency, develop this record more completely and make those. So what is it? What is the government asking us to do? What are you asking? We're asking you to uphold the district court's decision to remand for further proceedings. End of story. That's it. Yep. Okay. Now, just in response to Judge Friedland's questions about whether or not the GPO applies, I'm a little bit confused by your comments. So are you suggesting that it is possible that he could show that he's entitled to an exception? No, the short answer is no, I don't think you can do that. But why did you answer Judge Friedland's question the way you did? I don't understand. My understanding of her question was, what's the purpose of that? And I said, because Klayman is contesting it, why not give him another chance? I mean, that's... It seems like that. I mean, I think we started with, it's a question of law that we should probably decide ourselves now, right? And I think you agreed to that. But it does seem like there's still other questions about fault, which maybe we should decide also. And then there's a question of equity, which I don't see how we can decide because no one's done anything on that. I don't disagree with you. I would say that maybe there's still an open question about the fault. Well, not maybe, I think there's still enough ambiguity in there for you not to make that factual determination. But if you did, you're absolutely correct that there are two other issues that need to be discussed, that an ALJ needs to make factual findings on. And that's whether or not recouping the overpayment would be against the purposes of Title II, or whether it would be against equity and good conscience. And I don't understand quite the procedures by which that is still not resolved, but you have the money. Like, he's trying to say recoupment wouldn't be equitable, but you've already recouped. Can you explain how that happens? I don't know the technical ways that it happens, but when we issue an overpayment, we can start recouping it before the litigation plays out. But it seems kind of inconsistent for you to say, we do need a remand here, this isn't resolved, and yet you've already started recouping or finished recouping. Your Honor, I don't know how that works with the payment centers and the way things are taken out of claimants' benefit checks at that point. I really can't speak to how that works, but I don't think it's unusual for that to happen. I've dealt with overpayment cases before where the agency has started to recoup. And because this overpayment is so small, and it's been a couple of years, it has been recouped. And again, this claimant could afford so I think that definitely goes to the other two factors that have not been ruled on by the agency here, against the purposes of Title II and equity and good conscience. This is just a side note, I'm just curious. Is he collecting benefits now on his own account? As far as I know, he's not. Survivor's benefits are just on someone else's account. And there's something in the record, I can't remember if it's in the pleadings or if it's in the testimony, where he said he isn't yet collecting on his own record because partly he said it was because of the overpayment. He knew that the agency was going to recoup this payment anyway, so he decided to wait. But he still can get extra benefits on his own account. The GPO would not apply to his own account? The GPO only applies to spousal benefits. Right. Okay. Yes. All right. Thank you. My pleasure. And so just to bring it all back to abuse of discretion here, and we do not believe that the district court acted beyond the pale of reasonableness under these circumstances by remanding for further proceedings, even if you decide to rule on the issues that you've discussed. We still need to go back for further proceedings because there are some decisions that have not been made here that only the ALJ can make. So we ask you to uphold the district court's decision. Okay. Thank you. All right. I'll give you one minute for rebuttal, Mr. Richardson. There were just a couple of things. Number one, I believe that the reference was made to the notice on retirement benefits. So I believe he has applied for and is receiving retirement benefits. There is an award notice in the file. Second, when we discuss, I can't avoid quoting the regulation. The GPO does not apply if the individual was covered by both government and social security throughout his last 60 months. He was. The 60 months are not consecutive. I pulled the little chart, not chart, but questionnaire right out of the training manual. He meets all the requirements for the GPO. He does not meet the GPO reduction, even though back when we heard of people getting pensions, that the money he put in out of his own paycheck would count because it doesn't. He loses all of it. So, well, two-thirds of it. So I just believe that. Okay. Sorry. You're over your time and we appreciate your arguments this morning. This case is submitted for decision and that ends our session for today. Thank you all very much.
judges: PAEZ, FRIEDLAND, Korman